Good morning, Your Honors, and may it please the Court. Lawrence King for Plaintiff Appellant Gregory Brod. Your Honors, on January 1, 2010, a law took effect in California creating a, quote, standard of identity for honey in California. For a product to be sold as honey in California, it must contain pollen, according to the statute, unless the removal of such pollen was unavoidable in the removal of foreign matter. So you're using the terminology, as honey, to be sold as honey, which the district court said, well, you're talking about a labeling requirement. Now, at various times, you've made an argument that that product, minus the pollen, can't be sold at all. So what argument are you making to us this morning? Your Honor, the record is a bit muddled on that point, and I wish that were not the case. We are making the argument that it cannot be sold as honey. Okay. So a labeling issue. Is that right? Well, I would characterize it more as a quality and composition issue, but I would further say that any statute that refers to the quality of food will necessarily identify the food and what it can be sold as. But this substance, minus the pollen, could be sold as breakfast bread, potentially. Yes. Okay. So we're only asking whether it can be sold as honey. That is correct. Is it sold anywhere else as anything else? The pollen-less honey? Uh-huh. Well, pollen-less honey can be sold as honey in other places, and it depends on the variety of honey. Oh, I understand that. I mean, is it called something other than honey in any place in the country? Not to our knowledge, and I don't believe there's anything in the record on that. Okay. So the district court focuses on the Federal common name issue and say, well, under Federal law, Sue Honey would have to use the common name of this substance, which it said is honey. And the materials that you provided didn't indicate, as you've just said, that there was another common name for depollinated honey. It isn't like skim milk, which everyone knows is skim milk, that there wasn't a name. So why doesn't that just end the case? The reason that that doesn't end the case, Your Honor, is severalfold. First of all, it's our contention that the district court should not have gotten to the common and usual name inquiry and should have found, because there is no Federal standard of identity, but yet a State standard of identity, there was no conflict and, therefore, no preemption. That's precisely what the court. So do you think 343i doesn't apply? I do think 343i doesn't apply, Your Honor. And I agree, Your Honor, with the reading of the court in Guerrero v. Target. And in that case, the Florida district court was confronted with a honey regulation very similar to the California regulation and found that because 343i by its terms seems to apply where there is no standard of identity at all, not simply where there is no Federal standard of identity. So we believe that the district court did err in applying 343i and getting to the common and usual name inquiry under Guerrero v. Target. So in California, the statute defines honey as, you know, the stuff that comes from bees, basically. So it doesn't say anything about, and it includes pollen. So the definitional section of the statute just says stuff that comes from bees. Why isn't, so I didn't see any basis for saying there wasn't, that that isn't what people call depollinated honey, that they call it honey. Well, Your Honor, the purpose, it really depends a great deal on consumer expectations, and that is the purpose of a so-called standard of identity is to ensure that certain foods accord with consumer expectations. That's from a Fourth Circuit case, Nemphos v. Nestle Waters at 775 F. 3rd, 616. But more directly to the point of your question, we believe that whether the common and usual name of pollen-less honey is, quote, honey, is really a fact question or, at best, a mixed question of fact and law that shouldn't have been decided on the motion. The district court mainly looked to a general usage dictionary in determining that the name was still honey, even if the pollen was removed. It also looked to revoked Federal regulations. However — Do you have any statute or any source for saying that people commonly don't think of honey that's depollinated as honey? Well, Your Honor, there are a number of state statutes that the district court declined to consider, which have similar definitions as California, the definition that comes from the so-called world — the so-called codex standard promulgated by the World Health Organization. In addition, CF — But doesn't codex also define honey as stuff that comes from bees without any reference to pollen? Well, I think there's a question of where the line may be drawn as to what's the definition and what is — goes beyond the definition. But I think that is a fact question. That is, what do consumers expect? And I would also add that the district court did not consider 21 CFR 102.5, which talks about where the presence or absence of a certain ingredient that consumers would expect to be in there should be noted in the common and usual name. So again, another fact issue the Court did not consider. And finally, the other point — Counsel, may I interrupt just a moment? Yes, Judge Elson. What I didn't understand from your briefs, you said, that the codex standard, which is not — which is voluntary, should be considered, while the USDA standards, which are also voluntary, should not. We think that they can be considered, Your Honor. Again, I don't think this issue should have been decided on the motion to dismiss. In addition, we thought it important to point out that the district court failed to consider defendants' own petition to the FDA trying to get the codex standard adopted. And the reason they cite in their petition is that, quote, a consumer study conducted in 2005 for the National Honey Board suggests that U.S. consumers are very confused about what, quote, honey, close quote, means in terms of the food's composition. So the district court refused to take judicial notice of that petition, finding it not relevant. We believe that was error as well. And we believe this fact question or mixed question should not have been decided. Putting aside the motion to dismiss for a moment, do you have evidence that people consider honey that's depollinated not to be honey? Is there a body of evidence to that effect? Are there studies or surveys? Or what is the evidence that you have? We believe, had the case gotten into discovery, we would have submitted survey evidence that would be able to show that. We think particularly in California, and we had spirited argument on this point on the second motion dismissed, which is not the subject of the appeal, as well as an argument in a related case before Judge Chen about whether consumers believe pollen is a constituent of honey. And we believe. And had the case gotten to the discovery phase as we expected it to, we would have been able to show that. Do you want to save the rest of your time for a rebuttal? I do. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Joel Bertocchi, and I represent the Sioux Honey Association Cooperative. As a labeling case, this is an easy case. There is a strong Federal interest in uniform food labeling so that not only that labels not only tell consumers what is in the product they're buying, but that it tells them that in their own parlance. The plaintiffs suggested in their brief that this is a technical issue, but it is exactly the opposite of a technical issue. It is an issue of what people think honey is. And what people in this country think honey is, its common or usual name, is what Sioux sells. And is that a fact question, as proposing counsel indicates? Your Honor, it's not a fact question. And they never, plaintiffs never really presented it that way at the time of the first motion to dismiss to Judge Chen. There was an allusion to it in the oral argument on the motion. But what really happened below is we cited our sources, dictionary definitions, 17 State statutes, and the USDA grading system. And they cited different sources. They cited the Codex, and they made a reference to other States. They never enumerated them for Judge Chen. But they cited, they said various States that have adopted the Codex definition. I think based on that, the judge was able to construe the common or usual name statute and the common usage aspects of the applicable regulation and decide what the common or usual name is. Why does, why is the pollen taken out? Your Honor, my understanding is that the pollen is taken out as a necessary part of filtering out things like plant material and parts of bees. We, as we said in our brief, the district court was properly able to assume for purposes of this case at the pleading stage that it wasn't necessary. But I can tell you that if the case does go back, it would be our position that filtering the pollen out is necessary. Well, then why is it, why is it listed in all, in all of this, these definitions or I guess in the Codex as a, as a constituent part? Well, it's not actually. The Codex definition refers to pollen or constituent parts or pollen and constituent parts, which suggests to us that even under the Codex, pollen is not a constituent part of honey. Now, you requested that we take judicial notice of an FDA letter regarding the denial. Yes. Of a citizen petition requesting that the FDA adopt the Codex standard, are you conceding that the citizen petition and the Codex standard are relevant? I think the Codex standard is just the plaintiff's side of this case. But I think the judge properly disregarded it in the face of much greater authority on what the common or usual name is. I don't think that the Codex standard establishes what regular people think honey is or whether, if you look at a jar of Sue B. Honey, and I have one in my bag if you want to see it, that they look at that and they say honey. I don't think the Codex standard is relevant to that, no. So what's the basis of saying, for the district court to say, as a matter of law, this depollinated honey has the common and usual name honey? Well, Your Honor, it was a battle of sources in front of Judge Chen in the first motion to dismiss, and he went with what we've been told. But what tells us it's a question of law? Because what I hear opposing counsel arguing now is that it's a question of fact. Well, he's arguing it now, Your Honor. But with all respect to Mr. King, they didn't really argue that to Judge Chen. There was no discussion about surveys at the time of the first motion to dismiss. Even Mr. King said they had spirited argument about that in connection with the second motion to dismiss, the complaint, the motion to dismiss the second amended complaint, which is not at issue in this case. But when they defended their first amended complaint, which is at issue in this case, they just came in and said, well, we've got some State statutes, too. They didn't cite any of them except California, but they said they're out there and they said dictionaries are not a good source, and I think Judge Chen was clearly right in thinking they were on the issue of common usage. And they said the grading standards were revoked. And let me address that for a moment. The USD grading standards were never revoked. They were never law. They are voluntary, and they have always been voluntary. What happened in 1995 is that the administration was kind of cleaning up CFR. And as judges, you know how big CFR is, and I'm sure you would appreciate any effort to make it smaller. And so what they were doing is they were taking out things that weren't real regulations. The USDA standards were never more than something that you can put on your label if you satisfy it. Now, certainly, if you put, if you label something USDA grade A that isn't, you would be mislabeling. But if you have a product that is USDA grade A, you don't have to put USDA grade A on that, except you do in California, because in California they have a statute that requires it, but the USDA doesn't. You can also find the USDA standards on the website of the USDA today. They are still available to be used voluntarily by people who want to use them. What Judge Chen used them for is as a source of authority to tell him that that's what regular people think honey is, because even the USDA won't give it grade A if it's got pollen in it. And that's something that people would, that's something that people would be aware of. It was a source of authority on the common or usual name, just like the dictionary definitions, and just like the State statutes. So are you saying that opposing counsel waived the argument that it's a factual question? I think they did as to the first motion to dismiss. I understand that they talked about it later, but when they were defending the complaint that is at issue in this case, they did not make a serious effort to suggest that it was a factually disputed issue. They just brought in their own sources, and Judge Chen went with the better sources. The argument that Section 343i does not apply is also new. Unless I missed it, I've never heard it until this morning. And I think that would be a very, that holding along those lines would be a very bad result for the strong Federal interest in preemption, to say that a State standard means that you don't have to look at the common or usual name. The Federal statute, 343i, refers to the absence of a Federal standard for identity. And if you're going to have State standards substitute for Federal standards on a State-by-State basis, that's going to be a complete obstacle to the strong Federal interest in making sure not only that food labels are accurate, but that they're uniform, so that when somebody buys a jar of honey in California or Ohio or Florida or Texas, they're going to have the same label in front of them. They're going to know what the common, based on the common or usual name, what it is they're buying. It also might raise a Commerce Clause issue, but as I say, I haven't really thought that through, because I'm really hearing this today for the first time. Counsel refers to the FDA petition, and I think we just talked about that a moment ago in response to Judge Nelson's question. That petition, as we now know, was rejected. And I'm not sure what the position that we, that Sue Honey took in that petition really does for this case. I will say that Sue's concern in making that petition was not because it suddenly wanted to start filtering, leaving the honey in its, leaving the pollen in its honey. Sue's concern was on a totally different issue that was addressed by some of the Codex concerns, which is about adulteration, about imported honey that may have other things in it. That was why they supported that. But it really doesn't matter, because in the end, the petition was rejected. And so even if you assume that Sue took some sort of position about pollen by asking the FDA to do that, the FDA said no. And so what it really is, is something that somebody else said at another time that's not binding. What honey is out there that has pollen? You know, I looked into that, Your Honor. I got on the Internet like anybody else would do. There are, there are products called raw honey. My wife uses raw honey. But most of the time when I looked at, on the Internet, to find out what raw honey was, most of the references were to honey that's not pasteurized, honey that's not heated. I did not see any specific references, I can't say my view was exhaustive, to any, to any honey that is sold specifically with pollen in it, but I really just don't know for sure. Well, I'm just puzzled by the California statute, because why would it, you seem to be saying that you can't have honey that's grade A honey unless the pollen's out. Yes. That's what the Federal, that's what the USDA says. And yet the California statute says that the pollen is not to be removed. I think if, I think the genesis of that is concern over removing things other than But I'm not sure. I do know that as a labeling issue, though, the Federal government's, the preemption issue really is common or usual name and common usage. And in that instance, the, the USDA and its standards are very strong, are very strong support for Judge Chen's result. If there are no other questions? Thank you. We'd ask that Judge Chen be affirmed. All right. You have a few minutes left. Thank you, Your Honor. I'd like to pick up on a couple of the points my adversary made. With respect to 343I, I believe I heard counsel say it does not refer to the absence of a Federal standard, or that it refers to the absence of a Federal standard. The plain reading of the statute is where there is no standard of identity, as the Court in Guerrero v. Target found. However, even if it is susceptible to two plausible interpretations, where there is, there's Supreme Court authority on several cases that say where there are two plausible interpretations of a statute, there is a duty to accept the reading that disfavors preemption. And we believe, to the extent it's unclear, that principle should be applied in this case. So you would have us read it as label with no representation as to State or Federal definition, State or Federal standard of identity? I'm sorry, Your Honor. You were reading from where? 343I. Yes. Label where no representation as to definition and standard of identity. Either State or Federal? Yes, I would. You would have us read that in, okay? I would, as the Court did in the Florida case. And you made this argument below to the district court? I do not believe we squarely made this argument to the district court. However, of course, legal issues are reviewed de novo. But to answer your question, we did not squarely make this argument to the district court. And opposing counsel also says that you didn't make the argument that this was a factual question, not a legal question. Below. Is that correct? I could not find a record reference to that argument. I believed we had made it. Okay. Again, I would submit that that, too, is whether it's a fact question or a mixed question, is itself a legal question to be looked at de novo. Finally, Your Honor, I would add, if the California statute were preempted by the common and usual name provision as counsel states, this would happen all the time when a State creates a statute, enacts a statute setting a standard for a food and what it will certainly identify the food. And it would mean that in every one of those cases, if there's no Federal standard of identity, you would look to the common and usual name and the statute would be preempted. In fact, based on this argument, I would have expected a long line of cases in defendant's briefing where this has happened. And there simply aren't any. I mean, what's the point? So the district court said that the California statute doesn't squarely say it can't be sold as honey. It just provides the standard for you can't remove the pollen. And it says, well, the California court could have, or the California legislature could have required some additional labeling requirements saying pollen has been removed or something like that. So is that squarely preemption? Well, we think that essentially supports our point that it's mostly a quality and quality case, which is even a stronger, makes it an even stronger case against preemption. But even if it's a labeling case, as counsel has taken great pains to argue, even food and beverage labeling and branding issues have traditionally fallen within the province of state regulation. And that goes back to Plumlee v. Massachusetts, an old Supreme Court case, 155 U.S. 461. And in those situations where something is traditionally the province of state regulation, there's a presumption against preemption. Okay. If there are no more questions. I think we have your argument. Thank you very much. All right. This case is submitted. And that's the last case for our calendar this morning. So we're adjourned.
judges: Schroeder, Nelson, Ikuta